UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------X
BRUCE GILMORE,

                 Plaintiff,            **MEMORANDUM AND ORDER**
                                       20-CV-3410 (KAM)

    -against-

COMMISSIONER OF SOCIAL SECURITY,

                 Defendant.
---------------------------------------X
KIYO A. MATSUMOTO, United States District Judge:

        Plaintiff Bruce Gilmore appeals the final decision of the Commissioner of the Social Security Administration (the "Commissioner"), which found Plaintiff is not disabled and thus not entitled to disability insurance benefits under Title II of the Social Security Act (the "Act"). Before the court are Plaintiff's motion for judgment on the pleadings and the Commissioner's cross-motion for judgment on the pleadings. For the reasons set forth below, Plaintiff's motion is respectfully DENIED and the Commissioner's cross-motion is GRANTED.

## BACKGROUND

        The parties have filed a joint statement of stipulated facts detailing Plaintiff's medical history and the administrative hearing testimony, which the court incorporates by reference. (*See* ECF No. 11, Joint Stipulation of Facts ("Stip.").) Plaintiff was employed by the New York City Transit Authority as a train operator. (*Id.* at 1.) He last worked in March 2015. (*Id.*)

Plaintiff filed an application for disability insurance benefits on July 31, 2018, alleging a disability beginning March 24, 2015, due to bilateral knee injuries, spinal disease, post-traumatic stress disorder, cardiovascular disease, and diabetes. (ECF No. 8, Administrative Transcript ("Tr.") at 75, 203-04, 255.) Plaintiff's claims were denied on September 26, 2018. (*Id.* at 63-75, 78-84.)  On November 5, 2018, Plaintiff requested a hearing before an administrative law judge ("ALJ").  (*Id.* at 85-86.)  ALJ Zachary S. Weiss held hearings on Plaintiff's claims on August 12, 2019 and February 27, 2020.  (*Id.* at 28-62.)  At the supplemental hearing on February 27, 2020, Plaintiff amended his alleged disability onset date to January 1, 2018.  (*Id.* at 34-35, 233.)

On April 29, 2020, the ALJ found that Plaintiff was not disabled under the Act because he retained the residual functional capacity ("RFC") to perform his prior work as a train operator. (*Id.* at 10-22.)  On May 6, 2020, Plaintiff requested review of the ALJ's decision (*id.* at 200-201), which the Appeals Council denied on June 12, 2020, thus making the ALJ's decision the final decision of the Commissioner.  (*Id.* at 1-6.)  This appeal followed.  (*See generally* ECF No. 1, Complaint.)

## **Legal Standard**

### I.   **Standard of Review**

An unsuccessful claimant for disability benefits under the Act may bring an action in federal court seeking judicial

review of the Commissioner's denial of his or her benefits.   42 U.S.C. §§ 405(g), 1383(c)(3).   "A district court may set aside the Commissioner's determination that a claimant is not disabled only if the factual findings are not supported by substantial evidence or if the decision is based on legal error." *Burgess v. Astrue*, 537 F.3d 117, 127 (2d Cir. 2008) (quotations and citation omitted); *see also* 42 U.S.C. § 405(g).   "Substantial evidence is 'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Hallaron v. Barnhart*, 362 F.3d 28, 31 (2d Cir. 2004) (quoting *Richardson v. Perales*, 420 U.S. 389, 401 (1971)).   Inquiry into legal error requires the court to ask whether the claimant "has had a full hearing under the [Commissioner's] regulations and in accordance with the beneficent purposes of the [Social Security] Act." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (citation omitted; second alteration in original).   The reviewing court does not have the authority to conduct a *de novo* review, and may not substitute its own judgment for that of the ALJ, even when it might have justifiably reached a different result. *Cage v. Comm'r of Soc. Sec.*, 692 F.3d 118, 122 (2d Cir. 2012).

## II.  Determination of Disability

A claimant must be "disabled" within the meaning of the Act to receive disability benefits.  *See* 42 U.S.C. §§ 423(a), (d). A claimant is disabled under the Act when he or she is unable to

3

"engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." *Id.* § 423(d)(1)(A). The impairment must be of "such severity" that the claimant is unable to do his or her previous work or engage in any other kind of substantial gainful work. *Id.* § 423(d)(2)(A). "The Commissioner must consider the following in determining a claimant's entitlement to benefits: '(1) the objective medical facts [and clinical findings]; (2) diagnoses or medical opinions based on such facts; (3) subjective evidence of pain or disability . . . ; and (4) the claimant's educational background, age, and work experience.'" *Balodis v. Leavitt*, 704 F. Supp. 2d 255, 262 (E.D.N.Y. 2001) (quoting *Brown v. Apfel*, 174 F.3d 59, 62 (2d Cir. 1999) (alterations in original)).

Pursuant to regulations promulgated by the Commissioner, a five-step sequential evaluation process is used to determine whether the claimant's condition meets the Act's definition of disability. *See* 20 C.F.R. § 404.1520. This process can be summarized as follows:

> [I]f the Commissioner determines (1) that the claimant is not working, (2) that he has a 'severe impairment,' (3) that the impairment is not one [listed in Appendix 1 of the regulations] that conclusively requires a determination of disability, and (4) that the claimant is not capable of continuing in his prior type of work,

4

the Commissioner must find him disabled if (5) there is
not another type of work the claimant can do.

*Burgess*, 537 F.3d at 120 (quotations and citation omitted); *see
also* 20 C.F.R. § 404.1520(a)(4).

During this five-step process, the Commissioner must
consider whether the combined effect of any such impairment would
be of sufficient severity to establish eligibility for Social
Security benefits.  20 C.F.R. § 404.1523(c).  Further, if the
Commissioner does find a combination of impairments, the combined
impact of the impairments, including those that are not severe (as
defined by the regulations), will be considered in the
determination process. 20 C.F.R. § 416.945(a)(2).  At steps one
through four of the sequential five-step framework, the claimant
bears the "general burden of proving . . . disability."  *Burgess*,
537 F.3d at 128.  At step five, the burden shifts from the claimant
to the Commissioner, requiring the Commissioner to show that, in
light of the claimant's RFC, age, education, and work experience,
the claimant is "able to engage in gainful employment within the
national economy."  *Sobolewski v. Apfel*, 985 F. Supp. 300, 310
(E.D.N.Y. 1997).

### The ALJ's Disability Determination

Using the five-step sequential process described above,
the ALJ determined at step one that Plaintiff had not engaged in

substantial gainful activity since the alleged onset date.   (Tr. at 13.)[1]

At step two, the ALJ found that Plaintiff suffered from the following severe impairments: "degenerative disc disease of the lumbar spine, and degenerative joint disease of both knees and both ankles."  (*Id.*)

At step three, the ALJ determined that Plaintiff did not have an impairment or combination of impairments that equaled the severity of listed impairments under 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 404.1520(d), 404.1525 and 404.1526). (Tr. at 16.)  The ALJ then found, based on the medical evidence, that Plaintiff had the RFC to perform "medium work" as defined in 20 C.F.R § 404.1567(c),[2] except that "he can stand for 4 hours total, walk for 4 hours total, and sit for 6 hours total in an 8-hour workday.  [He] can lift and carry 50 pounds occasionally and 20 pounds frequently, and he can occasionally crouch and kneel." (Tr. at 16.)

---

[1] Several times in his decision, the ALJ referred to Plaintiff's initial onset date as March 24, 2015.  (Tr. at 10-11, 13, 22.)  As the decision also recognized, however, Plaintiff amended his alleged onset date to January 1, 2018.  (*Id.* at 13; Stip. at 10.)  Plaintiff makes no argument that the ALJ failed to consider the appropriate onset date when making his disability determination.  The court accordingly declines to consider the issue further.

[2] "Medium work involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds."  20 C.F.R. § 404.1567(c).  "If someone can do medium work, . . . he or she can also do sedentary and light work," and light work "requires a good deal of walking or standing, or . . . sitting most of the time with some pushing and pulling of arm or leg controls."  *Id.* § 404.1567(b)-(c).

As step four, in light of the foregoing, the ALJ concluded that Plaintiff was capable of performing his past job as a train operator. (*Id.* at 21-22.) In making this finding, the ALJ relied on a vocational expert who testified that train operation was a skilled, light-level occupation, and that a person with Plaintiff's background and functional capacity could perform such a job. (Stip. at 11; Tr. at 41-45.)

## DISCUSSION

Plaintiff contends that the ALJ lacked substantial evidence to conclude that he possessed the residual functional capacity to perform his prior work as a train operator. (ECF No. 9 ("Pl.'s Mem.") at 10.) In particular, Plaintiff challenges the ALJ's evaluation of four medical opinions and the ALJ's reliance on evidence about Plaintiff's daily activities and treatment. (*Id.* at 11-17.)

## I. Weighing of Medical Opinion Evidence

### A. Regulations Regarding Evaluation of Medical Opinion Evidence

In 2017, new regulations were issued that changed the standard for evaluating medical opinion evidence regarding claims filed on or after March 27, 2017. *See* 20 C.F.R. § 404.1520c. Plaintiff filed his claim on July 31, 2018; thus, the new regulations apply. Under the new regulations, the Commissioner will no longer "defer" or give "controlling weight" to a claimant's

treating medical sources. *Id.* § 404.1520c(a). Instead, when evaluating the persuasiveness of medical opinions, the Commissioner will consider the following five factors: (1) supportability; (2) consistency; (3) relationship of the sources with the claimant (including length of the treatment relationship, frequency of examination, purpose of the treatment relationship, extent of the treatment relationship, and whether the relationship is an examining relationship); (4) the medical sources' specialization; and (5) other factors, including but not limited to "evidence showing a medical source has familiarity with the other evidence in the claim or an understanding of [the SSA] disability program's policies and evidentiary requirements." *Id.* § 404.1520c(c). In each case, the ALJ must explain how he or she considered the factors of supportability and consistency, the two most important factors for determining persuasiveness. *Id.* § 404.1520c(a), (b)(2).

B. The ALJ's Assessment of Opinion Evidence

The parties' arguments center on four medical opinions before the ALJ. First, on August 24, 2018, Plaintiff attended an internal medicine examination with Dr. Ann Marie Finegan. (Tr. at 402-07.) Dr. Finegan opined that Plaintiff was mildly limited in his ability to kneel, crouch, and crawl; was moderately limited in his ability to climb stairs and perform tasks requiring prolonged standing; and should not climb ladders. (*Id.* at 406.) Dr. Finegan

noted that Plaintiff used a cane but that it did not appear medically necessary. (*Id.* at 405.)  The ALJ found the opinions of Dr. Finegan to be "persuasive," except for the limitations on crawling, prolonged standing, and climbing, which the ALJ concluded were "overly restrictive when considering the medical evidence as a whole." (*Id.* at 19.)  In crediting the remainder of Dr. Finegan's opinions, the ALJ noted that they were consistent with consultative examinations and treatment notes showing "none to mild findings in the knees and lower extremities, mostly normal gait, normal appearance, minimally reduced to full motor strength throughout, negative testing, no atrophy, good muscle bulk, no neurological deficits, and inconsistent use of a cane." (*Id.*) The ALJ also found that Dr. Finegan's other opinions were supported by the opinions and treatment notes of other physicians, discussed below, as well as evidence regarding Plaintiff's treatment and daily activities. (*Id.* at 20.)

Second, on September 18, 2018, state agency medical consultant Dr. R. Abeug reviewed the record and completed an RFC assessment. (*Id.* at 70-73.)  Dr. Abueg opined that Plaintiff could lift or carry a maximum of 20 pounds occasionally and 10 pounds frequently; stand and/or walk for about six hours in an eight-hour workday; and sit for about six hours in an eight-hour workday. (*Id.* at 70-71.)  Dr. Abueg also opined that Plaintiff could occasionally crawl, crouch, kneel, stoop, and climb. (*Id.* at 71.)

The ALJ found the opinions of Dr. Abueg to be "persuasive" except for the limitations on "lifting and carrying, climbing, stooping and crawling," which the ALJ again concluded were "overly restrictive when considering the medical evidence as a whole." (*Id.* at 21.)  In crediting Dr. Abueg's other opinions, the ALJ noted that they were consistent with: (1) consultative examinations and treatment notes, discussed above; (2) the opinions of other physicians, including Dr. Finegan; and (3) evidence regarding Plaintiff's "essentially normal activities of daily living."  (*Id.* at 20.)

Third, on September 17, 2019, Plaintiff attended an orthopedic examination with Dr. David Guttman.  (*Id.* at 477-82.) Dr. Guttman opined that Plaintiff had moderate limitations in sitting, standing, walking, climbing stairs, squatting, kneeling, bending, lifting, carrying, pushing, and pulling.  (*Id.* at 480.) In an accompanying functional assessment questionnaire, Dr. Guttman indicated that, in an eight-hour workday, Plaintiff could occasionally lift and carry up to 10 pounds; sit for two hours at a time and four hours total; stand for one hour at a time and two hours total; and walk for one hour at a time and two hours total. (*Id.* at 484-85.)  Dr. Guttman also opined that Plaintiff required a cane to ambulate more than a half block.  (*Id.* at 485.)  The ALJ found the opinions of Dr. Guttman to be "unpersuasive."  (*Id.* at 21.)  In making this finding, the ALJ found that Dr. Guttman's

10

opinions were unsupported by the consultative examinations and treatment notes discussed above. (*Id.*) The ALJ also noted that Dr. Guttman's opinions were inconsistent with the opinions of Dr. Ghazi, discussed below; portions of the opinions of Drs. Finegan and Abeug; and evidence regarding Plaintiff's daily activities. (*Id.*)

Fourth, on February 27, 2020, Dr. Darius Ghazi testified at the supplemental hearing based on his review of the record. Dr. Ghazi testified that Plaintiff appeared athletically inclined and had knee and ankle injuries, "perhaps related to his athletic activities," that were treated appropriately and resulted in mild to moderate osteoarthritis. (*Id.* at 36.) Dr. Ghazi opined that Plaintiff's functional capacity was "pretty much near normal" with some limitations, such as occasional kneeling and crouching. (*Id.* at 37.) He said that, in an eight-hour workday, Plaintiff could stand for four hours, walk for four hours, and lift 50 pounds occasionally and 20 pounds frequently. (*Id.*) On cross-examination, Dr. Ghazi stated that Dr. Guttman's assessment was overstated and that the mild osteoarthritis in Plaintiff's knees and ankles could easily be remedied by anti-inflammatory medications. (*Id.* at 39.) The ALJ found the opinions of Dr. Ghazi to be "persuasive," noting that they were consistent with the consultative examinations and treatment notes discussed above;

portions of the opinions of Drs. Finegan and Abueg; and evidence regarding Plaintiff's daily activities.  (*Id.* at 20.)

C. Analysis

Plaintiff contends that the ALJ erroneously focused its decision on the assessment of Dr. Ghazi and erroneously discounted portions of the testimony of Drs. Finegan and Abueg.  (Pl.'s Mem. at 12-14.)  In Plaintiff's view, the opinions of Dr. Guttman should have "carr[ied] the day" because he examined Plaintiff in person, his opinions were consistent with VA treatment records, and his opinions were not contradicted by the RFC evaluation of any examining physician.  (*Id.* at 15.)

The Court has reviewed the medical evidence in the record, including the aforementioned opinions, as well as the ALJ's decision, and finds that the ALJ properly weighed the medical evidence in the record, and his assessment of the RFC based on this evidence is supported by substantial evidence.  Consistent with 20 C.F.R. § 404.1520c, the ALJ evaluated the persuasiveness of the medical source opinions and explained how he considered the factors of supportability and consistency.  *See Raymond M. v. Comm'r of Soc. Sec.*, 2021 WL 706645, at *8 (N.D.N.Y. Feb. 22, 2021) ("At their most basic, the amended regulations require that the ALJ explain h[is] findings regarding the supportability and consistency for each of the medical opinions, 'pointing to specific

12

evidence in the record supporting those findings.'" (citation omitted)).

For example, the ALJ found Dr. Ghazi's opinion was supported by the treatment notes and examination reports concerning Plaintiff's knee pain, motor strength, and inconsistent use of a cane, among other things. (Tr. at 20, 309, 325, 328, 441, 562, 574, 612-616, 644, 670.) *See* 20 C.F.R. § 404.1520c(c)(1). Further, the ALJ found that Dr. Ghazi's testimony was consistent with portions of the opinions of Dr. Finegan, who stated that Plaintiff's use of a cane was not medically necessary, as well as portions of the opinions of Dr. Abueg, who opined that Plaintiff retained the capacity to stand or walk for up to six hours and sit for up to six hours in an eight-hour workday. (*Id.* at 19-20, 71, 405.) The ALJ also found that Dr. Ghazi's testimony was consistent with agency investigators who observed Plaintiff walking without the support of a cane and exercising at home. (*Id.* at 20, 727-728, 732.) The ALJ thus properly found Dr. Ghazi's opinion to be supported by objective evidence and consistent with the record as a whole. Although Plaintiff asserts that Dr. Guttman's assessment should have "carr[ied] the day" rather than Dr. Ghazi's (Pl.'s Mem. at 15), "the ALJ may 'choose between properly submitted medical opinions.'" *Heaman v. Berryhill*, 765 F. App'x 498, 500 (2d Cir. 2019) (quoting *Balsamo v. Chater*, 142 F.3d 75, 81 (2d Cir. 1998)).

13

Plaintiff also criticizes the ALJ's reliance on Dr. Ghazi's opinions because he "never examined" Plaintiff and based his opinions on "nothing more than a review of the file." (Pl.'s Mem. at 13.) Under the new regulations, however – which eliminated the treating physician rule – the source's relationship with the claimant is just one of several factors to be considered by the ALJ. 20 C.F.R. § 404.1520c(c)(3). The ALJ noted that Dr. Ghazi's opinions were based only on a file review yet found them persuasive in light of other evidence in the record, including treatment and examination notes, portions of the opinions of Dr. Finegan and Dr. Abeug, and evidence regarding Plaintiff's daily activities. (Tr. at 20.) Plaintiff may disagree with the ALJ's conclusion; however, the Court must "defer to the Commissioner's resolution of conflicting evidence" and reject the ALJ's findings "only if a reasonable factfinder would have to conclude otherwise." *Morris v. Berryhill*, 721 F. App'x 25, 29 (2d Cir. 2018) (summary order) (citations and emphasis omitted).

With respect to Dr. Finegan and Dr. Abueg, Plaintiff criticizes the ALJ for relying on only portions of their opinions and rejecting their proposed limitations on crawling, prolonged standing, climbing, lifting, carrying, and stooping. (Pl.'s Mem. at 12.) "It is well-recognized," however, "that the ALJ need not adopt any opinion in its entirety, but rather is entitled to weigh all the evidence and adopt the limitations supported by the

evidence." *Butler v. Comm'r of Soc. Sec.*, 2017 WL 2834482, at *8
(N.D.N.Y. June 29, 2017); *see also, e.g.*, *Matta v. Astrue*, 508 F.
App'x 53, 56 (2d Cir. 2013) (summary order) ("Although the ALJ's
conclusion may not perfectly correspond with any of the opinions
of medical sources cited in his decision, he was entitled to weigh
all of the evidence available to make an RFC finding that was
consistent with the record as a whole.").

Here, the ALJ noted that the limitations proposed by Dr.
Finegan and Dr. Abeug were "overly restrictive when considering
the medical evidence as a whole." (Tr. at 19-20.) This evidence
included the opinions of Dr. Ghazi, as well as diagnostic tests
and treatment notes indicating that Plaintiff "has impairments
that would reasonably result in some limitations, but not to the
extent alleged." (Tr. at 17-18.) Such "[g]enuine conflicts in
the medical evidence are for the Commissioner to resolve." *Veino
v. Barnhart*, 312 F.3d 578, 588 (2d Cir. 2002). Contrary to
Plaintiff's assertion, the ALJ did not "cherry-pick" evidence by
"ignoring" the limitations proposed by Dr. Finegan and Dr. Abeug.
*Christine S. v. Comm'r of Soc. Sec.*, 2021 WL 3721135 (W.D.N.Y.
Aug. 23, 2021) (citation omitted). Rather, the ALJ evaluated the
opinions of Dr. Finegan and Dr. Abueg in detail but found some of
their proposed limitations overly restrictive in light of other
evidence, including the opinions of Dr. Ghazi. "There is nothing

improper in an ALJ evaluating and weighing evidence in this manner." *Id.*

For the reasons discussed above, the court concludes that the ALJ adequately weighed the relevant medical evidence in assessing the severity of Plaintiff's condition and in making an RFC finding consistent with the overall record. *See, e.g.*, *Burmeister v. Comm'r of Soc. Security Admin.*, 2019 WL 4888636, at *7 (E.D.N.Y. Sept. 30, 2019) (noting that the ALJ properly considered "the documentary evidence, treatment notes, and Plaintiff's own testimony regarding his limitations" in making an RFC finding.)  Accordingly, because the ALJ's findings were consistent with the record as a whole, the court concludes that substantial evidence supported the ALJ's determination.

## II.  Daily Activities and Treatment

Plaintiff also appears to challenge the ALJ's reliance on evidence regarding Plaintiff's daily activities and treatment when making his RFC finding.  (Pl.'s Mem. at 16-17.)  The court concludes that the ALJ properly considered evidence of treatment and daily activities in conjunction with the medical opinions and evidence discussed above.

### A. Evidence of Plaintiff's Daily Activities and Treatment

First, the ALJ found Plaintiff's "use of a reported medically necessary cane to be inconsistent throughout the

evidence." (Tr. at 19.)  In 2010, for example, a Department of Veteran's Affairs physician noted Plaintiff had exaggerated numerous symptoms during an examination and stated that while Plaintiff had a cane, "it is more often carried rather than used for gait stability." (*Id.* at 642, 644.)  In her August 2018 consultative examination, Dr. Finegan likewise noted that "she did not know why" Plaintiff used a cane because "it d[id] not appear to be medically necessary." (Stip. at 6; *see* Tr. at 405.)  In an August 2018 Function Report, Plaintiff stated he used a cane prescribed by a doctor through a VA medical clinic. (Tr. at 251.)  In the same report, however, Plaintiff also stated that he did not use any supportive devices, such as a cane. (*Id.* at 249.)  On January 9, 2020, a Social Security Administration investigator visited Plaintiff's residence and noted that Plaintiff did not use the cane for walking and appeared to be in good shape. (*Id.* at 728.)  An agency investigator also observed Plaintiff walking at a fast pace and not using the cane as a supportive device on February 27, 2020. (*Id.* at 732.)

Second, the ALJ found that Plaintiff's treatment "showed that his condition is not as limited as alleged." (*Id.* at 19.)  In May 2017, for example, Plaintiff stated that naproxen relieved his pain and rated his pain as 4 to 6 out of 10. (*Id.* at 327.)  Plaintiff also noted that he had yet to try any physical therapy. (*Id.*)  In his August 2018 function report, Plaintiff reported that

although he could not lift heavy items or stand or walk for a long time, his pain did not affect his daily activities.  (*Id.* at 249-52.)  In July 2019, Plaintiff again stated that his pain was tolerable and controlled with ibuprofen and Tylenol.  (*Id.* at 672.)  And in September 2019, Plaintiff again reported taking naproxen for his pain.  (*Id.* at 558.)

Third, the ALJ concluded that evidence of Plaintiff's "active lifestyle" weighed against a finding of disability.  (*Id.* at 19.)  At the hearing, Plaintiff testified that he stopped exercising after he retired in 2015.  (*Id.* at 30-32, 34, 58.)  In May 2017, however, Plaintiff reported that he had home gym equipment and exercised regularly.  (*Id.* at 328.)  In her August 2018 consultative examination, Dr. Finegan noted that Plaintiff was "extremely muscular" and showed no signs of atrophy.  (Stip. at 7; *see* Tr. at 406.)  And in January 2020, Plaintiff answered the door for a Social Security investigator while wearing a t-shirt, shorts, compression sleeves on both knees, and supports on his wrists that appeared to be athletic tape.  (Stip. at 2; Tr. at 727.)  When the investigator asked Plaintiff about the loud music coming from his home, Plaintiff reported that he was working out.  (*Id.*)

B. Analysis

After reviewing the evidence, the court concludes that the ALJ properly considered Plaintiff's daily activities and

treatment when making his RFC finding.  Contrary to Plaintiff's contentions, it was proper for the ALJ to note that Plaintiff inconsistently used a cane; had received only conservative medical treatment, including non-prescription, over-the-counter pain medication; and engaged in daily activities like exercising and performing household chores.  Indeed, the regulations explicitly direct the ALJ to consider the claimant's activities of daily living and the nature of the claimant's medication and treatment. 20 C.F.R. § 404.1529(c)(3)(i), (iv), (v).

Plaintiff argues that "sometimes walk[ing] without the aid of a cane does not establish an ability to engage in sustained, day-in-and-day-out medium-level work."  (Pl.'s Mem. at 16.)  The ALJ reasonably determined, however, that evidence of Plaintiff's cane being inconsistently used and medically unnecessary was "a clear inconsistenc[y] [that] impugned [Plaintiff's] credibility" and weighed against crediting Dr. Guttman's opinions.  *Rojas v. Comm'r of Soc. Sec.*, 2017 WL 943931, at *9 (E.D.N.Y. Mar. 9, 2017); *see also, e.g.*, *Ortiz v. Saul*, 2020 WL 1150213, at *7 (S.D.N.Y. Mar. 10, 2020) (ALJ properly discounted physical therapist whose opinion "was inconsistent with both other examining physicians' opinions finding a cane was not medically necessary and Plaintiff's inconsistent use of a cane"); *Fernandez v. Comm'r of Soc. Sec.*, 2020 WL 6746832, at *8 (E.D.N.Y. Nov. 16, 2020) (ALJ considered Plaintiff's subjective complaints, including the need for a cane,

19

but reasonably determined that they were inconsistent with the record as a whole).  In making his RFC determination for medium work, the ALJ relied on substantial evidence showing that Plaintiff's activities were not as severely impacted as he testified and Dr. Guttman opined.  As discussed above, this evidence included not just the opinions of Dr. Ghazi, but also treatment notes, diagnostic tests, the observations of agency investigators, and portions of the opinions of Dr. Finegan and Dr. Abeug.

Similarly, the ALJ reasonably determined that Plaintiff's use of over-the-counter medications like Tylenol supported the RFC.  (*See* Pl.'s Mem. at 16.)  "The fact that a patient takes only over-the-counter medication to alleviate [his] pain may . . . help to support the Commissioner's conclusion that the claimant is not disabled if that fact is accompanied by other substantial evidence in the record."  *April B. v. Saul*, 2019 WL 4736243, at *6 (N.D.N.Y. Sept. 27, 2019) (quoting *Burgess*, 537 F.3d at 129).  Here, the ALJ identified ample substantial evidence to conclude that Plaintiff was not disabled, including not just the evidence regarding Plaintiff's responsiveness to over-the-counter medication, but also the opinions of physicians and medical records.  Thus, Plaintiff's "conservative treatment regimen" was properly relied upon "as additional evidence supporting the ALJ's determination rather than as compelling evidence sufficient in

itself to overcome an otherwise valid medical opinion." *Pesco v. Kijakazi*, 2021 WL 4463228, at *3 n.3 (E.D.N.Y. Sept. 29, 2021) (quoting *Netter v. Astrue*, 272 F. App'x 54, 56 (2d Cir. 2008)); *see also, e.g.*, *Curley v. Comm'r of Soc. Sec. Admin.*, 808 F. App'x 41, 44 (2d Cir. 2020) (holding that the ALJ's RFC finding "was supported by medical evidence, including evidence that his symptoms were responsive to medication and that he had received only conservative treatment . . . .").

With respect to his daily activities, Plaintiff contends that "[t]he ability to do simple household chores or to engage in home exercises . . . does not bespeak a capacity for regular, competitive employment." (Pl.'s Mem. at 16.)  To be sure, "[a]n individual can perform [his] daily activities and still experience debilitating pain at the intensity and persistence and with the limiting effects [he] claims." *Scatola v. Comm'r of Soc. Sec.*, 2020 WL 5752300, at *9 (E.D.N.Y. Sept. 26, 2020) (citation omitted; alterations original).  Importantly, however, the ALJ did not rely solely upon Plaintiff's exercise or household chores to conclude that Plaintiff could perform medium work; rather, this evidence demonstrated inconsistencies in the record about Plaintiff's abilities that the ALJ was required to resolve. *Cruz v. Comm'r of Soc. Sec.*, 2018 WL 3628253, at *8 (W.D.N.Y. Jul. 31, 2018) ("The issue is not whether Plaintiff's limited ability to undertake normal daily activities demonstrates [his] ability to work.

21

Rather, the issue is whether the ALJ properly discounted [Plaintiff's] testimony regarding [his] symptoms to the extent that it is inconsistent with other evidence." (citation omitted; alterations original)).  As discussed above, the ALJ identified medical opinions and other evidence that contradicted Plaintiff's testimony that he had not exercised regularly since retiring in 2015, and found that Plaintiff's limitations were not as severe as he claimed.  *See, e.g.*, *Poupore v.* Astrue, 566 F.3d 303, 307 (2d Cir. 2009) (finding that the claimant's daily activities detracted from his allegations of disability); *Conetta v. Berryhill*, 365 F. Supp. 3d 383, 402, 406 (S.D.N.Y. 2019) (ALJ properly discounted opinions of treating physicians and plaintiff's testimony based on evidence of daily activities, including exercise); *Arbello v. Comm'r of Soc. Sec.*, 2019 WL 1384094, at *11 (E.D.N.Y. Mar. 27, 2019) (ALJ properly discounted physician's opinion based on evidence of daily activities, including gym exercise).

Finally, Plaintiff appears to argue that individuals aged 60 and over cannot perform the exertional requirements of medium work.  (*See* Pl.'s Mem. at 14.)  A claimant's age, while possibly relevant to the severity of an individual's impairments, is not relevant in assessing RFC or determining whether the claimant can perform past relevant work at step four of the five-step framework.  20 C.F.R. § 404.1560(b)(3).

For the reasons discussed above, the court concludes that the ALJ adequately weighed the relevant evidence and testimony in assessing the severity of Plaintiff's condition and in making an RFC finding consistent with the overall record. Accordingly, because the ALJ's findings were consistent with the record as a whole, the court concludes that substantial evidence supported the ALJ's determination.

**CONCLUSION**

For the reasons set forth above, the court respectfully denies Plaintiff's motion for judgment on the pleadings and grants the Commissioner's cross-motion for judgment on the pleadings. The Clerk of Court is respectfully directed to enter judgment in favor of the Commissioner and close this case.

SO ORDERED.


/s/ Kiyo A. Matsumoto
Kiyo A. Matsumoto
United States District Judge
Eastern District of New York


Dated:      January 7, 2022
            Brooklyn, New York

23